UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

AUG 25 2008

**Clerk, U.S. District and Bankruptcy Courts**

CALVIN H. GURLEY
612 Underwood Street, N.W.
Washington, D.C. 20012
(202) 646-4616
Calvin.gurley@dhs.gov

*Plantiff*

v.

Michael W. Hager
Acting Director
U.S. Office of Personnel Management,
1900 E Street, N.W.
Washington, D.C. 20415
*Defendant*

Michael B. Mukasey
The U.S. Attorney General
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Peter Nickles
U.S. Attorney for The District of Columbia
501 Third Street, N.W.
Washington, D.C. 20001

Jeffrey Taylor
U.S. Attorney For the District of Columbia
301 Third Street, N.W.
Washington, D. C. 20001

Case: 1:08-cv-01469
Assigned To : Kennedy, Henry H.
Assign. Date : 8/25/2008
Description: TRO/PI

**Request Expedient Review**

---

# MOTION FOR TEMPORARY INJUNCTION CEASING HATCH ACT REQUIREMENTS UNTIL FURTHER ORDER OF THIS COURT

---

Petitioner, Calvin H. Gurley moves the Court for a ~~preliminary injunction~~ TRO ceasing enforcement of Hatch Act requirements by the United States of America to allow District of Columbia residents who are Federal and District of Columbia government employees to run as independent candidates in partisan elections in the District of Columbia election year of 2008, pending further order of this Court.

2

The request for 'Expedient Review" is to enable candidates to obtain the required number of residents' signature [by August 27, 2008] in order for the candidate's name to appear as an Independent candidate for City Council on the 2008 D.C. Election Ballot.

The reasons supporting this motion are set forth in the attached memorandum.

Grounds for court jurisdiction is found and the same as Ward Three Democratic Committee vs United States of America, et al, Civil Action No. 78-853, Filed August 29, 1980, James E. Davey, Clerk.

Petitioner [a Federal Government employee who is a resident in Washington , D.C.] is entitled to relief for the wrongful actions of petitioner's employer the United States Federal Government. Petitoner's request for temporary relief will be followed up with a motion from the petitioner requesting that the U.S. District Court of the District of Columbia abolish one of the two Hatch Activity Act exemption requirement that demands any resident of the District of Columbia who is a Federal or District of Columbia government employee must provide or prove that the majority of the voters in the District of Columbia are employed by the District of Columbia or Federal Government.

**MEMORANDUM IN SUPPORT**

**I. Relief Requested and Applicable Standard**

This Court must immediately issue a preliminary injunction to cease the regulation to the prohibitions in 5 U.S.C 7323 (a) (2) and (3) and the requirements specified in section 7325. And allow Federal and District of Columbia Government employees [whose residence is in the District of Columbia] to run for political office under Part 733, the exemption from the prohibitions in 5 U.S.C. 7323 (a) (2) and (3) that requires to run as independent candidates for

this upcoming 2008 local partisan political office and are Permitted to participate in other political activities connected with election for local public office as specified in part 733. Section 733.107 (c) of the final regulation includes a list of designated localities whose residents have been granted a partial exemption by OPM.

To grant a preliminary injunction, the court examines four factors: (1) whether there is a substantial likelihood that plaintiff will prevail on the merits; (2) whether the plaintiff will suffer irreparable injury if the injunction is not granted; (3) whether no third parties will be unjustifiably harmed if the injunction is granted; and (4) whether the public interest will be served by the injunction. *Vanguard Transp. Sys., Inc. v. Edwards Transfer & Storage Co.* (10th Dist. 1996), 109 Ohio App.3d 786, 790, 673 N.E.2d 182, citing *Valco Cincinnati, Inc. v. N & D Machining Serv., Inc.* (1986), 24 Ohio St.3d 41, 492 N.E.2d 814. On appeal, a trial court's judgment regarding relief will not be disturbed in absence of a clear abuse of discretion. *Corbett v. Ohio Bldg. Auth.* (1993), 86 Ohio App.3d 44, 89, 619 N.E.2d 1145.

**(1) Petitioner is likely to succeed on the merits of his challenge petition.**

The Office of Personnel Management and the Office of the Special Counsel ignored their discriminatory enforcement and blindly adhered to the Hatch Act two set of rules that grants locality residents [who are Federal or District of Columbia employees] exemption to participate as an Independent candidate for a local partisan political office. As it was written it was obeyed by the OPM, OSC and enforced knowing that Maryland and Virginia had one challenge to satisfy while the District of Columbia had [2] totally different challenge(s) to satisfy.

(4)

5 CFR Section 733.107 below: Sec. 733.107 Designated localities. (a) OPM may designate a municipality or political subdivision in Maryland or Virginia and in the immediate vicinity of the District of Columbia, or a **municipality in which the majority of voters are employed by the Government of the United States**, when OPM determines that , because of special or unusual circumstances, it is in the domestic interest of employees to participate in local elections. (b) Information as to the documentation required to support a request for designation is furnished by the General Counsel of OPM on request. (c) The following municipalities and political subdivisions have been designated, effective on the day specified:

In Maryland Annapolis (May 16, 1941). Anne Arundel County (March 14, > 1973). Berwyn Heights (June 15, 1944). Bethesda (Feb. 17, 1943). > Bladensburg (April 20, 1942). Bowie (April 11, 1952). Brentwood (Sept. 26, > 1940). Calvert County (June 18, 1992). Capitol Heights (Nov. 12, 1940). > Cheverly (Dec. 18, 1940). Chevy Chase, section 3 (Oct. 8, 1940). Chevy > Chase, section 4 (Oct. 2, 1940). Chevy Chase View (Feb. 26, 1941). Chevy > Chase Village, Town of (March 4, 1941). College Park (June 13, 1945). > Cottage City (Jan. 15, 1941). District Heights (Nov. 2, 1940). Edmonston > (Oct. 24, 1940). Fairmont Heights (Oct. 24, 1940). Forest Heights (April > 22, 1949). Frederick County (May 31, 1991). Garrett Park (Oct. 2, 1940). > Glenarden (May 21, 1941). Glen Echo (Oct. 22, 1940). Greenbelt (Oct. 4,

(3)

> 1940). Howard County (April 25, 1974). Hyattsville (Sept. 20, 1940). > Kensington (Nov. 8, 1940). Landover Hills (May 5, 1945). Martin's > Additions, Village of (Feb. 13, 1941). Montgomery County (April 30, 1964). > Morningside (May 19, 1949). Mount Rainier (Nov. 22, 1940). New Carrollton > (July 7, 1981). North Beach (Sept. 20, 1940). North Brentwood (May 6, > 1941). North Chevy Chase (July 22, 1942). Northwest Park (Feb. 17, 1943). > Prince George's County (June 19, 1962). Riverdale (Sept. 26, 1940). > Rockville (April 15, 1948). St. Mary's County (March 2, 1998). Seat

> Pleasant (Aug. 31, 1942). Somerset (Nov. 22, 1940). Takoma Park (Oct. 22,
> 1940). University Park (Jan. 18, 1941).

While Maryland and Virginia satisfies the requirement of location, a Hatch Act Activity requirement, this privilege requirement was not given to the District of Columbia. However, a more difficult and trying requirement was given by the OPM- the District must provide evidence or prove that federal and District employee [residents] who live in the city make up 50% or more of the District population. This is not fair and there is not justification for this unfairness . Maryland and Virginia just happen to be in the location named by OPM to successfully win one Hatch Activity Act requirement while the District in the middle of both must prove otherwise. This unfairness by a select location is akin to giving a qualifying requirement based upon a person skin color. The grantor, based upon their color selection of white skin, allows exemption to all who have white color skin , however, the dark color skin person must prove or perform another herculean task to qualify for the same exemption.

Both Maryland and Virginia were apart of the District and many who lived in the District relocated into one of these privileged [by the Hatch Activity Act exemption] states that stand side by side to the District of Columbia.

The terms of the two challenges [in itself] demonstrates two different rules that are not being fairly and equally applied to all whom desires exemption from the Hatch Act. This two law requirement [Double Standard] is no different from the 1940 signs appearing above two, separate water fountains which states; "for Whites" and the other "for Colored ".

This United States and the 50 states of the Union who promulgate laws that prohibits one group of citizens from participating in a Democratic political electorate system that all others

enjoy must come to an end. Yes, the District of Columbia was late in the U.S. Congress granting it Home Rule [the ability to elect their political officials] but the District should be granted the same challenge as any other locality or district that will and has successfully petitioned the Hatch Act exemption from the OPM. There is no reason or justifiable excuse why one local government should be preferential treated to qualify for exemption status under the Hatch Activity Act . The United States Congress and OPM should show fairness by requiring one set of rule for all citizens of the United States of America when it comes to passing out exemptions.

**(2). This Court should grant Petitioner' emergency motion because Petitioner will again suffer irreparable harm not being allowed to participate as an Independent Candidate in the 2008 D.C. elections.**

An immediate granting of exemption status as provided in the Hatch Act provision to D.C. and Federal government employees will allow participation that would be imminent by the merits of the challenge that the petitioner presents.

On January 19, 2006 the OPM acknowledged and approved that the petitioner had provided the **statutory requirement concerning special or unusual circumstances** that exist in the District of Columbia. **Exhibit (a)** OPM 's response and **Exhibit (b)** petitioner's request for exemption .

However, the petitioner request for exemption status was then denied because the second discriminatory and misapplied requirement was not fulfilled – **evidence to show that the majority [50% or more] of voter residing in the District of Columbia are employed by the Government of the United States or the District of Columbia.**

The petitioner, like those municipalities and jurisdictions that already have been granted exemption status [by the OPM] on providing the required evidence to satisfy the statutory requirement concerning special or unusual circumstances, should be able to join those exempted local municipalities without going over a second hurdle that was not "also" presented to the already exempted Maryland and Virginia municipalities and local districts.

Petitioner has already satisfied the designated for only Maryland and Virginia exemption requirement to prove special and unusual circumstances. Now, OPM is standing on the petitioner's [prohibiting] opportunity to participate as an independent candidate in the upcoming 2008 D.C. local elections by denying participation until petitioner satisfies another [second] requirement to qualify for exempt status that states of Maryland and Virginia have not been required by the OPM to satisfy; to prove or provide evidence that 50% or greater of the residents of the locality or local district are Federal or District of Columbia Government employees.

**(3) Whether no third parties will be unjustifiably harmed if the injunction is granted?**

The court granting the petitioner exemption status as allowed by the Hatch Act to run in the 2008 D.C. Elections as an independent candidate brings harm or injury to no one. However, it will bring benefits to the residents of the city. The creative ideas and well thought out plans to change the quality of life for the District and its residents are deserving and is the hope of the people.

**(4) Whether the public interest will be served by the injunction?**

The District is in dire need of resolving age-old problems and the increase on crime and public fear on the city streets. Petitioner served on Mayor Marion Barry's Blue Ribbon Commission on Public Housing. This Commission outline not only the positives surrounding affordable housing, also the social services, maintenance, school components areas that completes the entire housing project to operate within a respected community. Petitioner was one of the founders of the First Orange Hat Neighborhood Patrol in the District of Columbia that begun in Anacostia, Southeast , Washington. He served as the first Vice Presidents. Additionally, Petitioner served as the President of the Fairlawn Avenue Civic Association, also located in Southeast, Anacostia and as the recent President of Takoma Civic Association [Takoma, Northwest, D.C.] Petitioner started the city's first Back To School Kick-Off in Anacostia. Local businesses, banks and the D.C. Lottery Board supplied school supplies [their logo pens, pencils, rulers, notebooks, etc] to be disseminated to the children of Anacostia at a music festival in the park. Dominos Pizza match each pizza Petitioner bought to feed the children and their parents, Safeway Stores contributed the refreshments.

In 1986 , petitioner resigns from the Federal Government to run for Mayor of D.C. against Mr. Marion Barry. Petitioner addressed the high crime and gun deaths by introducing the first D.C. Military School to enroll trouble and committed youths. Petitioner lost the Democratic primary along with Ms. Ida Taylor the second of three candidates for the Office of Mayor.

**An injunction is necessary to provide Petitioner the immediate opportunity to participate in the only 2008 D.C. Election which entry into several past local elections have been illegally denied by the OPM and OSC and the Federal Emergency Management Agency in.**

Petitioner has a right to challenge the discriminatory practice of the OPM and the OSC administering two different challenges to qualify for the exemption status provided under the Hatch Act provision. Petitioner has already suffered much harm and lost his opportunity to become an elected official of the District to offer its citizens a wholesome quality of life, afford its children a quality education and reduce fear and outlawry on the city streets. An injunction is vital to providing Petitioner the only chance he has to run for political office in the 2008 D.C. Elections. The petitioner has been wrongfully denied an opportunity to participate in the last 2004 and 2006 elections and his several years of challenges to the OPM, to the OSC, to FEMA

General Counsel and its EEO office to participate in those past elections have been gravely denied. Petitioner now seeks outside the U.S. Federal Government to have the District Court determine that the OPM will use only one requirement for all jurisdictions to qualify for the exemption status provided by the Hatch Act.

[Petitioner] have been continuously challenging and presenting facts with arguments to OPM, the OSC, FEMA General Counsel and FEMA EEO office in a period of four years and was denied to participate [as an independent candidate] in two local D.C. elections –during the four year struggle.

**Exhibit (c)** Ms.Jo Ann Marie [OPM] response to Petitioner's request for prescribed permission for exemption (July 06, 2004).

**Exhibit (d)** Ms. Jo Ann Marie [OPM] formal response to Petitioner on Hatch Activity Act.

**Exhibit (e)** Office of Special Counsel letter informing of no wrongdoings when Petitioner was candidate for Ward Four Member of the Democratic State Committee.

**Exhibit (f)** Petitioner's formal Equal Employment Opportunity grievance against the Department of Homeland Security- Federal Emergency Management Agency wrongfully administering the Hatch Activity Act.

**Exhibit (g)** Department of Homeland Security- Federal Emergency Management Agency, Office of Equal Rights decision to dismiss discrimination allegations that FEMA followed OPM's Hatch Act requirements that 'wrongly' denied the Petitioner [who is a Federal employee and resides in the District of Columbia] the exemption to run as an Independent Candidate in the D.C. local elections.

**Exhibit (h)** Petitioner's December 30, 2005 letter to OPM Director, Madame Linda M. Springer that request exemption from the prohibitions of the U.S. States Code, 5 U.S.C $ 7323 (a) (2) and (3) for the District of Columbia residents who are Federal and D.C. Governments employees.

The most recent OPM denial was the January 19, 2006 letter that recognized Petitioner did expose one of the two requirements for the District resident to be granted Hatch Act exemption; proved unusual circumstance. However, Madame Linda Springer – Director of OPM denied exemption as a result of wrongly demanding that Petitioner prove or provide evidence of the 50 percent or greater rule for the District of Columbia. Petitioner must prove that 50 percent or greater of the registered voters are Federal or District of Columbia employees.

It appears that the Federal Government will not turn its head to Petitioner's warnings and substantial discovery to the unfair practice that requires Washington D.C. Federal and D.C. government employees to satisfy "two" requirements while Maryland and Virginia local municipalities only have to satisfy "one" exemption requirement –to provide evidence of special or unusual circumstances.

As to the "location" requirement that D.C. in not in the vicinity of local districts in Maryland and Virginia is obscure and can not be fairly justified.

## Argument - District of Columbia is a Federal District

The Washington Times, Friday, August 1, 2008 news edition, Nation -section //page A3; Second Amendment –part, "Chicago suburb ends gun ban after D.C. ruling" - reported the following:

***"...In 1981, this..northern Chicago suburb...becoming the first municipality in the nation to ban the possession on handguns. Twenty-seven years later MORTON GROVE has repealed it law, bowing to the U.S.Supreme Court decision in June[2008] that affirmed homeowner's rights to keep guns for self-defense. ...It's one of several Illinois communities – reluctant to spend money on legal fights – rushing to repeal their gun bans after the court struck down a D.C. ban..."***

***Though MortonGrove's gun ban is five years younger than Washington's[D.C.], it's considered the first in the country because the village is a municipality, whereas Washington is a federal district.*** Exhibit I.

What you have here is a municipality claiming the same court decision as the so call "Federal District' had been rendered [by the U.S. Supreme Court] to strike down their gun ban.

The municipality of Morton Grove admits itself to be the same and identical to the federal district of Washington, D.C.

The District of Columbia is only designated a Federal District according to the group which established it …The Federal Government. This group of elected law makers is no different from state elected lawmakers, or legal groups that have established communities, municipalities, or districts through out the United States in the past. The only considerable difference is that the elected group that established Washington, D.C. so happened to be Federal elected lawmakers[in lieu of state elected lawmakers] but all districts are the same with residents, a political systems and taxing systems, schools, business commerce, fire department and police departments.

There is only one 2008 D.C. public election. The OPM and OSC have constantly denied the petitioner exemption status and any opportunity to participate in the 2004 and 2006 D.C. public elections were taken from the petitioner. The 2008 D.C. public election will make it three elections [six years] that the petitioner has been wrongly denied exemption status to participate as an Independent in the D.C. elections.

Why now? The petitioner has battled the OPM, the OSC, FEMA General Counsel and its EEO office and has worn out any chances of receiving satisfaction from the U.S. Federal Government.

**Petitioner prays that the court gives allows exempt status as found in the Hatch Act for residents of the District of Columbia, who are Federal and District Government employees to run as Independent candidates in District elections.**

8/25/08

**Calvin H. Gurley** **date**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

AUG 2 5 2008

**Clerk, U.S. District and Bankruptcy Courts**

CALVIN H. GURLEY )
612 Underwood Street, N.W. )
Washington, D.C. 20012 )
(202) 646-4616 )
Calvin.gurley@dhs.gov )

*Plantiff* )

v. ) CIVIL ACTION NO. 08 1469

Michael W. Hager )
Acting Director )
U.S. Office of Personnel Management )
1900 E Street, N.W. )
Washington, D.C. 20415 )
*Defendant* )

Michael B. Mukasey )
The U.S. Attorney General ) **Request Expedient Review**
950 Pennsylvania Avenue, N.W. )
Washington, D.C. 20530 )

Peter Nickles )
U.S. Attorney for The District of Columbia )
441 Third Street, N.W. )
Washington, D.C. 20001 )

Jeffrey Taylor )
U.S. Attorney for the District of Columbia )
501 Third Street, N.W. )
Washington, D.C. 20001 )

---

**LOCAL RULES 65.1**

Michael W. Hager ) Hand Carried 8/25/08
Acting Director ) [illegible] A @ 2:44
U.S. Office of Personnel Management ) 10th floor General Counsel Office
1900 E Street, N.W. ) MR MANN
Washington, D.C. 20415 )

(1) Complaint and
(2) Motion

[signature] 8-25-08